UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SENTERRA LIMITED,**

        **Plaintiff,**        :

  v.

**RICE DRILLING D, LLC,** *et al.*,        :

        **Defendants.**

**Case No. 2:24-cv-3181**
**Chief Judge Sarah D. Morrison**
**Magistrate Judge Kimberly A. Jolson**

## OPINION AND ORDER

Senterra Limited filed this action in state court against Rice Drilling D, LLC, EQT Production Company, and Gulfport Energy Corporation. After removing the case to this Court, Defendants moved to dismiss the Complaint. For the reasons set forth below, their motion is **GRANTED** in part and **DENIED** in part.

## I.  FACTUAL ALLEGATIONS

The following factual allegations from the Complaint are considered as true for purposes of the pending motion. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).

Senterra owns two parcels of land in Belmont County, Ohio.[1] (Compl., ECF No. 6, at ¶ 29.) In November 2012, it entered into a lease with Rice to develop oil and gas minerals from two specified subsurface formations, the Marcellus Shale and the Utica Shale; Senterra reserved its mineral rights to all other subsurface formations. (*Id.*, at ¶ 72.) Rice and Gulfport then entered into a joint venture

---

[1] Parcel 1 is Parcel No. 36-00516.000 and Parcel 2 is Parcel No. 36-00569.001. (Compl., at ¶ 29)

agreement whereby Gulfport would drill wells for Rice's Lease. (*Id.*, at ¶ 59.) And EQT has a working interest in Gulfport's wells. (*Id.*, at ¶ 60.) Defendants pay royalties to Senterra on their sale of oil, gas, and/or other hydrocarbon products produced from the wells on its property. (*Id.*, at ¶¶ 121, 128.)

From December 2016 to January 2017, Defendants drilled three horizontal wells on Senterra's property, and the wells have been producing oil and gas since August 2017. (*Id.*, at ¶ 56; Mot., ECF No. 9, at PAGEID # 139). Defendants' wells are now producing from the Point Pleasant formation, which sits directly below Utica Shale. (*Id.*, at ¶¶ 13, 72.) Senterra alleges that the Lease prohibits Defendants from exploring, drilling, or producing oil and gas from the Point Pleasant formation. (*Id.*, at ¶¶ 50–51.)

Senterra also claims that Rice and EQT failed to properly pay the required royalty payments under the Lease. (*Id.*, at ¶¶ 121–122.)

## II. MOTION TO DISMISS

### A. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff

2

> pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In ruling on a 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). "But the Court may not rely on the contents of those public records if the facts are 'subject to reasonable dispute' and the records are from sources whose accuracy can reasonably be questioned. *Martinez-Porte v. Multi-Color Corp.*, No. 1:22-CV-768, 2023 WL 7178264, at *2 n. 3 (S.D. Ohio Nov. 1, 2023) (Cole, J.) (citations omitted).

B. ANALYSIS

Senterra brought claims for declaratory judgment, trespass, conversion, unjust enrichment, and breach of contract.[2] (Compl.) Defendants move to dismiss these claims under Federal Rule 12(b)(6) for failure to state a claim. The Court will first address whether Senterra can bring its claims against EQT and Gulfport. Then the Court will address Defendants' remaining arguments in the order the claims are raised in the Complaint.

    1.    **Senterra's Claims against EQT and Gulfport**

        a)    **Declaratory Judgment and Breach of Contract Claims Against EQT and Gulfport (Counts I, V–VII)**

Defendants argue that, because Gulfport and EQT are not parties to the Lease, the declaratory judgment and breach of contract claims against them fail.

Under Ohio law,[3] a contract is binding upon the parties to the contract "and those in privity with them." *Ohio Sav. Bank v. H.L. Vokes Co.,* 560 N.E.2d 1328, 1332 (Ohio Ct. App. 1989). "[A]n action for breach of contract can be maintained only by the parties to the contract or those deriving rights from the contracting parties." *Id.* A party may "derive rights" from the contracting parties to an oil and gas lease if it has a working interest in the rights of the lease. *See Tera II LLC v. Rice Drilling D, LLC*, 679 F. Supp. 3d 620, 633 (S.D. Ohio 2023) (Marbley, J.) (plaintiff brought breach of contract claims against the lessee and assignee to its

---

[2] Count V of the Complaint is labeled "fees," which the Court construes to be a contract claim for indemnification.

[3] When a district court exercises diversity jurisdiction, it applies the substantive law of the state in which it sits. *Twin City Fire Ins. Co. v. Adkins,* 400 F.3d 293, 297 (6th Cir. 2005).

4

lease). "[A]n interest carved out of the lessee's share of the oil and gas [is] ordinarily called the working interest." *Talmage v. Bradley*, 377 F. Supp. 3d 799, 804 n. 2 (S.D. Ohio 2019) (Morrison, C.J.). A party that is an assignee or has a working interest in the lease is subject to a declaratory judgment related to the scope of that lease. *TERA II, LLC v. Rice Drilling D, LLC*, No. 2:19-CV-2221, 2019 WL 6051115, at *3 (S.D. Ohio Nov. 15, 2019) (Morrison, C.J.)

Senterra alleges that EQT and Gulfport have working interests in the Lease. (Compl., at ¶¶ 32–33.) It claims that EQT receives revenue from the sale of the oil, gas, and/or other hydrocarbons from Senterra's property, and that both EQT and Gulfport pay royalties to Senterra under the Lease. (*Id.*, at ¶¶ 46, 61.) Thus, EQT and Gulfport are subject to the declaratory judgment claim because that judgment has the potential to determine the scope of their rights on Senterra's property.

In addition, Senterra alleges that Rice assigned a working interest in the Lease to EQT and Gulfport. (Resp., at PAGEID # 368.; *See* Compl., at ¶¶ 32–33.) Although Senterra did not expressly allege an *assignment* in the Complaint, its allegations support a reasonable inference that Rice assigned working interests – some of its rights and obligations in the Lease – to EQT and Gulfport. According to Senterra, Rice was the lessee, yet EQT and Gulfport drilled wells and produced oil and gas on the property, profited from the wells, and made royalty payments to Senterra. (Compl., at ¶¶ 46–84.) And, in August 2023, when Senterra demanded that both EQT and Gulfport update their royalty payments, Gulfport complied and EQT refused to do so, leading to EQT underpaying Senterra. (Compl., at ¶¶ 46–47.)

5

Because the Court must construe the facts in the light most favorable to Senterra, dismissal at this stage is not appropriate.

### b) *Tort Claims Against EQT and Gulfport (Counts II–IV)*

As to Senterra's tort claims, EGT and Gulfport seek dismissal on two grounds; first, they argue that Senterra has made only group allegations with a bare recitation of the elements; and second, that public records show that EQT and Gulfport neither drilled nor produced oil and gas from Senterra's property.

Starting with the first argument, when there are multiple defendants, a plaintiff can group its allegations against them as long as the defendants are put on notice of the claims against them and the facts supporting such claims. *Igo v. Sun Life Assurance Co. of Canada*, 652 F. Supp. 3d 929, 934-35 (S.D. Ohio 2023) (citing *Twombly*, 550 U.S. at 545). "At the pleadings stage, the practice is sufficient where discovery will help expose who will have any actual responsibility." *Shah v. Fortive Corp.*, 2024 WL 3226108, at *14-15 (S.D. Ohio June 27, 2024) (citing *Igo*, 652 F. Supp. 3d at 934 n.2). Senterra has sufficiently put EQT and Gulfport on notice of the claims against them. It alleges that EQT and Gulfport knew Utica Shale and the Point Pleasant formation were separate and distinct, that EQT and Gulfport drilled three horizontal wells that reached into the Point Pleasant formation, and that EQT and Gulfport are producing and receiving revenue from the wells. (Compl., at ¶¶ 62, 64–69, 84.) The Complaint sufficiently alleges EQT and Gulfport's specific conduct and provides fair notice of the claims against them.

6

Turning to Defendants' second argument, their public records do not contradict Senterra's allegations – they do not address whether EQT and/or Gulfport obtained a working interest in the Lease and/or entered into a joint venture with Rice after the well permits were executed.

Defendants' Motion to Dismiss the claims against EQT and Gulfport is **DENIED**.

### 2. Count I – Declaratory Judgment

Defendants argue that the declaratory judgment claim must be dismissed for two reasons: 1) the claim is barred by the statute of limitations; and 2) the Court should decline to exercise jurisdiction over the claim.

#### a) The declaratory judgment claim is timely.

Senterra's declaratory judgment claim asks the Court to interpret the Lease's reservation clause and determine whether it reserved certain mineral rights. It also asks the Court to decide whether Utica Shale and Point Pleasant are two distinct formations.

"To determine the appropriate statute of limitations with respect to a declaratory judgment claim, courts look to the underlying nature or subject matter of the claim." *Naiman Family Partners, L.P. v. Saylor*, 161 N.E.3d 83, 87 (Ohio Ct. App. 2020). "When a declaratory judgment action 'revolves around breach of contract claims,' the applicable statute of limitations" is the same one applied to a breach of contract claim. *Freelon v. GRG Farms, Inc.*, No. H-23-022, 2024 Ohio App. LEXIS 3525, at *13–14 (Ohio Ct. App. 2024); *See Ricketts v. Everflow E., Inc.*, 68 N.E.3d 165, at *8–9 (Ohio Ct. App. 2016) (the statute of limitations for an

7

underlying contract applies to a party's declaratory judgment claim when that claim seeks a declaration of the parties' rights in light of that breach). Under Ohio law, a breach of oil and gas lease related to ordinary contractual actions must be brought within eight years, and a breach related to royalty payments must be brought within four years. Ohio Rev. Code Ann. § 2305.041.

The eight-year statute of limitations period for breach of ordinary contractual obligations[4] applies here. The need for clarification of rights under the Lease occurred when Defendants produced oil and gas from the Point Pleasant formation – Defendants completed the last well on Senterra's property on January 26, 2017, and began producing oil and gas in August 2017. Thus, Senterra's declaratory judgment claim is timely.

### b) The Court will retain jurisdiction over the declaratory judgment claim.

Under the Declaratory Judgment Act,[5] a district court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "A district court has discretion to entertain a declaratory judgment action even where the court has subject matter jurisdiction." *Honey Crest Acres, LLC v. Rice Drilling D, LLC*, 723 F. Supp. 3d 617, 622 (S.D. Ohio 2024)

---

[4] To the extent that Senterra argues that the underlying nature of the claim is based on continuing trespass, for the reasons below, the declaratory judgement claim is also timely because the trespass claim is timely. (Resp., at PAGEID # 374–375.)

[5] Although Senterra brought its declaratory judgment claim under Ohio law, the Court applies federal law after the case is removed. *See, Knowlton Constr. Co. v. Liberty Mut. Ins. Co.*, No. 2:07-CV-0748, 2007 U.S. Dist. LEXIS 80605, at *4 (S.D. Ohio Oct. 31, 2007) (Kemp, M.J.) (citations omitted).

8

(Marbley, J.) (citations omitted). A district court considers five factors to decide whether to exercise jurisdiction over a declaratory judgment claim:

> (1) [W]hether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory action remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;" (4) whether the use of the declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy which is more effective.

*Grand Turk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984). The five factors favor or are neutral on the exercise of jurisdiction over Senterra's claim.

First, whether declaratory judgment would help settle the controversy, favors exercising jurisdiction. A declaratory judgment would settle a threshold matter – whether Defendants acted without authority when they drilled and produced oil and gas from the Point Pleasant formation.

Second, whether it would help clarify the parties' legal relationship, leans in favor of exercising jurisdiction. Here, a declaratory judgment would clarify the legal relationship between the parties. Indeed, if the Lease grants Defendants the right to drill into the Point Pleasant formation, many of Senterra's claims would be moot. Conversely, should the Court conclude that the Lease reserved Senterra's rights in the Point Pleasant formation, then the litigation will proceed to the remaining claims. Senterra also risks future litigation with Defendants because they continue to produce oil and gas from the Point Pleasant formation. Certainty as to the parties' rights under the Lease would allow the parties to proceed without risk of future litigation.

9

The parties agree that factors three and four are neutral, so the Court need not address those factors.

As to the last factor, whether there is a more effective remedy, it also warrants exercising jurisdiction. Although Senterra has also brought tort and breach of contract claims on the issue of whether Defendants had a right to drill and produce oil and gas from Point Pleasant, judicial economy counsels against dismissing the declaratory judgment claim. When a plaintiff seeks relief in addition to a declaratory judgment, both of which a court must address, then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay or dismissal would not save any judicial resources. *See, e.g., Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n*, 481 F.3d 414, 422–23 (6th Cir. 2007).

Defendants' Motion to Dismiss Senterra's declaratory judgment claim is **DENIED**.

### 3. Count II – Trespass

Defendants seek dismissal of Senterra's trespass claim on two grounds: 1) the claim is barred by the statute of limitations, and 2) the claim is partially barred because they have not trespassed on Parcel 2.

#### a) The trespass claim is timely.

The statute of limitations for a trespass claim in Ohio is four years. Ohio Rev. Code Ann. § 2305.09. But when the statute of limitations begins to run may differ depending on whether the trespass is permanent or continuing. "A permanent trespass occurs when the defendant's tortious act has been fully accomplished," but

10

the plaintiff's injury continues despite there being no further conduct by the defendant. *Sexton v. City of Mason*, 883 N.E.2d 1013, 1018 (Ohio 2008). A continuous trespass is when "the defendant's tortious conduct is ongoing, perpetually creating fresh violations of the plaintiff's property rights." *Id.* A permanent trespass claim must be filed within four years of the last completed act of trespass, but a continuing trespass must be brought within 21-years of the initial trespass (until the claim has ripened into a presumptive right by adverse possession). *Id.* at 1021; *Reith v. McGill Smith Punshon, Inc.*, 840 N.E.2d 226, 234 (Ohio Ct. App. 2005).

The parties dispute whether Senterra's claim alleges a permanent or continuing trespass. Defendants argue that their actions would be a permanent trespass because they fully completed any allegedly tortious conduct when they drilled their last well on Senterra's property on January 26, 2017. But the Complaint alleges that Defendants have continued operating and producing oil and gas from the Point Pleasant formation. (Compl., at ¶ 72.) Thus, Senterra has sufficiently alleged a continuing trespass by Defendants. Senterra's trespass claim is not time-barred.

          **b)**     **Partial dismissal of the trespass claim is improper.**

"A common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue." *Apel v. Katz*, 697 N.E.2d 600, 607 (Ohio 1998) (citations omitted). A landowner's subsurface rights are violated when a person invades their property such that it interferes with the landowners'

11

reasonable and foreseeable use of that property. *Honey Crest*, 723 F. Supp. 3d at 624. In the oil and gas context, when a defendant's fracking produces oil and gas minerals from a landowner's subsurface property without the owner's permission, that is a trespass. *Id.*

A defendant's tortious conduct can be a direct or indirect trespass. *Id.* at 625; *Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*, 91 F. Supp. 3d 940, 978 (S.D. Ohio 2015) (Marbley, J.). Direct trespass is when a party intentionally invades another person's property; an indirect trespass is an indirect invasion of property, such as causing vibrations to the subsurface property significant enough for the owner's minerals to migrate to the trespasser's wells. *Golden Eagle Res. II, LLC v. Rice Drilling D, LLC*, No. 2:22-CV-02374, 2023 WL 1927799, at *4 (S.D. Ohio Feb. 10, 2023) (Marbley, J.).

Defendants argue that they did not trespass on Parcel 2, pointing to a plat map showing that Bigfoot Well # 8 is on Parcel 1 but not on Parcel 2. (Mot., at PAGEID # 147.) But the Complaint alleges both direct and indirect trespass for each of Defendants' wells, including Big Foot Well # 8: Senterra claims that Defendants drilled Big Foot Well # 8 into Point Pleasant, and "[t]he laterals for Bigfoot Well # 8 go under portions of the Property and indirectly or directly cause the oil and gas, or constituents to be produced from the well." (Compl., at ¶ 66–67.)

Defendants' Motion to Dismiss the trespass claim is **DENIED**.

### 4. Count III – Conversion

"Conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner or withholding it from his possession under a

12

claim inconsistent with his rights." *Joyce v. Gen. Motors Corp.*, 551 N.E.2d 172, 175 (Ohio 1990). Conversion claims are subject to a four-year statute of limitations period. Ohio Rev. Code Ann. § 2305.09. "[A] cause of action for conversion accrues either when the plaintiff discovered or, in the exercise of reasonable diligence, should have discovered the conversion." *Karlen v. Carfangia*, No. 2000-T-0081, 2001 WL 589381, at *6 (Ohio Ct. App. June 2, 2001).

Defendants argue that the wells began producing oil and gas on August 15, 2017, so any alleged conversion occurred outside the four-year statute of limitations period. But Senterra alleges that it discovered the alleged conversion recently. The issue of when Senterra knew or reasonably should have known of Defendant's alleged conversion is better resolved after discovery.

Defendants' Motion to dismiss the conversion claim is **DENIED**.

### 5. Count IV – Unjust Enrichment

Defendants present three bases to dismiss Senterra's unjust enrichment claim: 1) statute of limitations; 2) that Senterra did not willingly offer Defendants a benefit, and 3) Senterra has other legal remedies available.

#### a) The unjust enrichment claim is timely for allegations since May 16, 2018.

The statute of limitations for an unjust enrichment claim is six years. Ohio Rev. Code Ann. § 2305.07. An unjust enrichment claim accrues "from the date that the money is retained under circumstances where it would be unjust to do so." *Palm Beach Co. v. Dun & Bradstreet*, 665 N.E.2d 718, 723 (Ohio Ct. App. 1995) (citation omitted). "Ohio courts do not apply the discovery rule to toll the statute." *Jones v.*

13

*Lubrizol Advanced Materials*, 559 F. Supp. 3d 569, 610 (N.D. Ohio 2021) (citing *Bank of Am., N.A. v. Darkadakis*, 76 N.E.3d 577, 585 (Ohio Ct. App. 2016).

Defendants argue the unjust enrichment claim is untimely because any alleged benefit they received was conferred on August 17, 2017, when they began producing oil and gas from the Point Pleasant formation. But they continue to profit from their oil and gas production from Senterra's property. Senterra filed this case on May 16, 2024. Thus, the unjust enrichment claim is timely for any alleged unjust enrichment that occurred in the six years before that date. To the extent that Senterra seeks recovery for unjust enrichment losses before May 16, 2018, Senterra's unjust enrichment claim is **DISMISSED**.

### b) The unjust enrichment claim is adequately pled.

"Unjust enrichment occurs when a person 'has and retains money or benefits which in justice and equity belong to another[.]'" *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005). "To prevail on a claim of unjust enrichment, a plaintiff must show: '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment[.]'" *M.S. by Slyman v. Toth*, 97 N.E.3d 1206, 1215 (Ohio Ct. App. 2017) (quoting *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)).

Senterra has alleged the first and second elements that it conferred a benefit upon Defendants by leasing certain mineral rights and Defendants knew of this benefit. It has also alleged the third element that it would be unjust to allow Defendants to retain benefits of the oil and gas or minerals they produced from the

14

Point Pleasant formation without properly compensating Senterra. Senterra has sufficiently pled unjust enrichment.

### c) The unjust enrichment claim can be pled in the alternative to other legal remedies.

Defendants argue that Senterra cannot bring an unjust enrichment claim when other legal remedies exist. But it may plead unjust enrichment in the alternative at this stage. *See Price v. Gulfport Energy Corp.*, No. 2:20-CV-1057, 2020 WL 5433683, at *4 (S.D. Ohio Sept. 10, 2020) (Marbley, J.) ("While Plaintiffs cannot recover on a claim of unjust enrichment if an express contract covers the same factual and legal issues, this Court has held that Plaintiffs may plead breach of contract along with unjust enrichment in the alternative at this stage.") (citing *Cunningham Prop. Mgmt. Tr. v. Ascent Res. - Utica, LLC*, 351 F. Supp. 3d 1056, 1066 (S.D. Ohio 2018) (Sargus, J.); Fed. R. Civ. P. 8(d)(2)).

Defendants' Motion to Dismiss the unjust enrichment claim is **GRANTED** in part as to allegations before May 16, 2018, but **DENIED** in all other respects.

### 6. Count V – Breach of Contract – Fees

Defendants moved to dismiss Senterra's claim for recovery of fees under the Lease, arguing that 1) the indemnification clause does not contemplate their actions, and 2) the fees claim is untimely.

### a) The Lease contemplates Defendants' actions.

Ohio law "generally allows enforcement of indemnity agreements." C*leveland Clinic Health Sys.-E. Region v. Innovative Placements, Inc.*, No. 1:11-CV-2074, 2012 WL 1998049, at *1 (N.D. Ohio June 4, 2012) (quoting *Glaspell v. Ohio Edison Co.*,

15

505 N.E.2d 264, 266 (Ohio 1987)). An express indemnity agreement creates an obligation for the liable party to indemnify under the agreement. *Id.,* at *1–2 (citing *Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253, 256 (1987).

Indemnity agreements are interpreted the same way contracts are interpreted. *Cleveland Clinic*, 2012 WL 1998049, at *2. Courts "give the terms of the contract [their] plain and ordinary meaning." *Id.* (quoting *Bank One, N.A. v. Echo Acceptance Corp.*, 522 F. Supp. 2d 959, 972 (S.D. Ohio 2007) (Marbley, J.). When the contractual language in dispute is clear, a court relies on the written contract itself to find the parties' intent. *Id.* "As a matter of law, a contract is unambiguous if it can be given a [single] definite legal meaning." *Id.* (citations omitted).

> The Lease's indemnity clause states:
>
> Lessee agrees to indemnify, defend, and hold harmless Lessor and Lessor's heirs, successors, agents, assigns, and any other person acting under Lessor's direction and/or control against any and all claims, damages, costs, losses, liabilities, expenses (including but not limited to any reasonable attorneys' fees, expert fees, and court costs) arising out of, incidental to or resulting from the Lessee's Operations and actions, and the Operations and actions of Lessee's servants, agents, employees, guests, licensees, invitees, independent contractors, assigns, or any other person acting under Lessee's direction and control. Lessee's obligations hereunder shall survive the termination of this Lease.

(Compl., at PAGEID # 105.)

Defendants argue that the indemnity clause applies only to its operations and activities that the Lease contemplated. (Mot., at PAGEID # 151.) According to Defendants, this means that, because Senterra claims that drilling into the Point Pleasant formation was not allowed by the Lease, the indemnity clause does not

16

apply here. They are wrong as a matter of law. The Lease's indemnification provision plainly applies to Rice's "Operations and actions, and the Operations and actions of [Rice's] servants, agents, employees, guests, licensees, invitees, independent contractors, assigns, or any other person acting under [Rice's] direction and control" – these operations and actions are the subject of this case.

Thus, the indemnity clause applies to the current dispute.

### b) Senterra's claim for fees is timely.

The statute of limitations for a claim for indemnity does not begin to run until there is a finding of liability. *Parkhurst Mall Corp. v. Taneyhill,* No. 2006-T-0082, 2007 Ohio App. LEXIS 289, at *11–12 (Ohio Ct. App. Jan. 26, 2007) (collecting cases). Senterra is asserting its claim now so the Court can decide the issue of indemnification at the same time as any finding of liability. Senterra's claim is timely made.

The Motion is **DENIED** to the extent it seeks to dismiss the indemnity claim.

### 7. Counts VI & VII – Breach of Contract – Royalty Payments

As discussed above, the statute of limitations for breach of an oil and gas lease related to royalty payments is four-years. Senterra alleges that Rice and EQT have underpaid royalties from affiliate sales (Count VI), and that EQT has underpaid royalty payments for several pay periods (Count VII). Because both breach of contract claims relate to royalty payments, the four-year statute of limitations applies.

As to the alleged underpaid royalties from affiliate sales, the Complaint does not indicate when EQT and Rice underpaid, so the claim is limited to any

underpayments within the four years before this action was filed. As to EQT's alleged underpayments for royalties, Senterra alleges that they occurred after August 2023, within the statute of limitations.

Thus, the Motion to Dismiss is **GRANTED** in part as to Count VI for any underpaid royalties before May 16, 2020. The Motion is **DENIED** as to Count VII.

### III. CONCLUSION

Defendants' Motion to Dismiss (ECF No. 9) is **GRANTED in part** and **DENIED in part**. Any allegations in Count IV arising prior to May 16, 2018, and any allegations in Count VI arising prior to May 16, 2020, are **DISMISSED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**