IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SENTERRA LIMITED,**

        **Plaintiff,**

    v.                                          Civil Action 2:24-cv-3181

                                              Magistrate Judge Kimberly A. Jolson

**RICE DRILLING D, LLC, et al.,**

        **Defendants.**

## OPINION AND ORDER

Defendants' Motion for Partial Judgment on the Pleadings is before the Court. (Doc. 42). For the following reasons, the Motion is **DENIED**.

**I.    BACKGROUND**

This case concerns oil wells. Plaintiff Senterra Limited, LLC ("Senterra") filed the action in the Belmont County Court of Common Pleas, and Defendants Rice Drilling D, LLC ("Rice"), EQT Production Company ("EQT"), and Gulfport Energy Corporation ("Gulfport") quickly removed the case to federal court. (Doc. 1). The parties since consented to the jurisdiction of the Magistrate Judge under 28 U.S.C. § 636(c). (Docs. 33, 37).

As alleged, Senterra owns two parcels of land in Belmont County, Ohio. (Doc. 22-1 at ¶ 29). In November 2012, Senterra entered into an oil and gas lease with Rice concerning those parcels ("the Lease"). (*Id.* at ¶¶ 31, 50; *see also id.* at 30–36 (memoranda of the lease)). Senterra alleges EQT and Gulfport also own a portion of the working interest in the Lease. (*Id.* at 32–33). As for Gulfport, Senterra says it and Rice entered into a joint venture agreement allowing Gulfport the right to drill a horizontal well under the Lease. (*Id.* at ¶ 59). And EQT allegedly owns all or

a portion of Rice or has "some other agreement with" Gulfport resulting in an interest in the wells at issue. (*Id.* at ¶ 60).

According to Senterra, the Lease permits Defendants to develop oil and gas minerals from two subsurface formations, the Marcellus Shale and the Utica Shale. But Senterra reserved its oil and mineral rights for all other formations, including the Point Pleasant. (*Id.* at ¶ 51; *see also id.* at ¶ 72). Under the Lease, from December 2016 to January 2017 Defendants drilled three horizontal wells—Bigfoot Well #6, Bigfoot Well #8, and Bigfoot Well #10 ("the Wells") on Senterra's property. (*Id.* at ¶ 56). But in doing so, the Complaint alleges that the Wells impermissibly invaded the Point Pleasant formation. And because the Lease did not grant Defendants the authority to drill into or produce oil, natural gas, or other hydrocarbons from that formation, Defendants illegally produced and removed products from Senterra's property. (*Id.* at ¶¶ 50–51, 63–69, 71). For these alleged Lease violations, Senterra brings claims for trespass, conversion, and unjust enrichment. (*Id.* at 86–117 (also asserting a claim for fees under the Lease's indemnity clause)).

"In alternative to the other Counts," Senterra's Complaint asserts that Defendants Rice and EQT have not made proper royalty payments for the "gas, oil, and any other salable materials produced from the Wells at the prevailing price" in breach of the Lease. (*Id.* at ¶¶ 118–123). Because EQT "has been using the incorrect ownership decimal interest" for Senterra's interests in the oil and gas rights, EQT owes Senterra "at least" $750,051.05 in back royalties. (*Id.* at 124–129). Senterra also seeks a declaratory judgment (*id.* at ¶¶ 74–85), and damages (*id.* at 22–23).

Several weeks after the Court partially granted Defendants' motion to dismiss, Defendants filed a motion for partial judgment on the pleadings. (Doc. 42; *see also* Doc. 31 at 1–2 (dismissing Senterra's unjust enrichment claim to the extent it seeks recovery for losses before May 16, 2018,

and Senterra's breach of contract claim for any underpaid royalties before May 16, 2020)). According to them, Senterra's claims for trespass, conversion, and unjust enrichment are impermissible collateral attacks on drilling permits issued by the Ohio Department of Natural Resources ("ODNR"). (Doc. 42). Defendants' Motion is fully briefed and ready for consideration. (Docs. 43, 44).

## II.   STANDARD

The Federal Rules of Civil Procedure provide that, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment may be granted under Rule 12(c) where the moving parties clearly establish that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law." *Williamson v. Recovery Ltd. P'ship*, No. 2:06-cv-292, 2010 WL 3769136, at *2 (S.D. Ohio Sept. 24, 2010) (citations omitted). In examining a Rule 12(c) motion, the Court uses the same standard of review applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Mixon v. State of Ohio*, 193 F.3d 389, 399–400 (6th Cir. 1999). As such, the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).

While the Court's view on a Rule 12 motion is typically limited to the pleadings, *Bates v. Green Farms Condo. Ass'n,* 958 F.3d 470, 483 (6th Cir. 2020), the Court may consider written instruments attached to the pleadings. *See Smith v. City of Barberton*, No. 1:20-cv-584, 2021 WL 752595, at *3 (N.D. Ohio Feb. 26, 2021). If "matters outside the pleadings are presented to and

3

not excluded by the court, the Rule 12(c) motion then "must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).

### III. DISCUSSION

As noted, Defendants move for an order granting them judgment on the pleadings for Senterra's trespass, conversion, and unjust enrichment claims. (Doc. 42). They argue that the claims are impermissible collateral attacks on valid permits issued by ODNR that authorize them "to produce hydrocarbons from the Point Pleasant [formation] beneath unitized properties." (*Id.* at 3, 8–12). The Court first addresses whether it can consider the ODNR permits before turning to the merits.

#### A. Consideration of the ODNR Well Permits

As a threshold issue, Defendants' Motion requests that the Court consider certain permits issued by ODNR's Division of Oil and Gas Resource Management. (Doc. 42). The three permits, which Defendants attached to their Motion, purportedly granted Rice permission to drill a well in the location of Bigfoot Wells #6, #8, and #10. (Doc. 42-1 at 2 (permit to "drill new well, horizontally" for the purpose of "oil and gas" from "Utica thru Point Pleasant" under the lease and well name Bigfoot #6 between October 5, 2016 and October 5, 2018), 3 (permit to "drill new well, horizontally" for the purpose of "oil and gas" from "Utica thru Point Pleasant" under the lease and well name Bigfoot #8 between October 1, 2016 and October 1, 2018), 4 (permit to "drill new well" for "stratigraphic" purpose from "Utica thru Point Pleasant" under the lease and well name Bigfoot #10 between June 17, 2016 and June 18, 2018)). Senterra presents several arguments why the Court should pay the permits no mind.

Senterra begins by saying the permits are improperly considered on a Rule 12(c) motion because the permits were neither attached to nor referenced in the parties' pleadings. (Doc. 43 at

4

3). It also argues that the permits are beyond the Court's view because they are not certified copies or otherwise authenticated. (*Id.*). These arguments fail for the same reason. The permits are government records found on a government website.[1] As this Court has previously observed, courts generally may "take 'judicial notice of records and information located on government websites because they are self-authenticating under Federal Rule of Evidence 902.'" *Igal v. U.S. Consulate Gen. in Johannesburg*, No. 2:23-CV-4160, 2024 WL 2882653, at *1 (S.D. Ohio June 7, 2024) (quoting *Dayton Veterans Residences Ltd. P'ship v. Dayton Metro. Hous. Auth.*, No. 3:16-CV-466, 2022 WL 1913334, at *4 (S.D. Ohio June 3, 2022)). Because the Court can take judicial notice of the permits, it need not convert Defendants' Rule 12(c) motion into a Rule 56 summary judgment motion under Federal Rule of Civil Procedure 12(d). *See, e.g.*, *Johnston v. Comm'r of Soc. Sec.*, No. 1:16-CV-449, 2016 WL 6652742, at *2 (S.D. Ohio Nov. 9, 2016), *report and recommendation adopted*, No. 1:16CV449, 2016 WL 7103313 (S.D. Ohio Dec. 6, 2016).

Senterra separately asserts that the Court should consider neither the ODNR permits nor Defendants' related arguments because Defendants did not raise collateral attack in their answer. (Doc. 43 at 3; *see also* Doc. 38 at ¶ 5 (Defendants' answer asserting that Senterra's claims are collateral attacks only on unit orders issued by the Ohio Division of Oil and Gas Resources Management)). Presumably, Senterra's theory is the collateral attack of the ODNR permits must be raised as an affirmative defense or else the defense is waived. But "[a]n affirmative defense is an 'assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true.'" *Navarro v. Procter & Gamble Co.*, 515 F. Supp. 3d 718,

---

[1] The permits for Bigfoot Wells #6, #8, and #10 can be found at the following websites by selecting the last "PERMIT (.pdf)" links: https://gis.ohiodnr.gov/MapViewer/WellSummaryCard.asp?api=34013210650000; https://gis.ohiodnr.gov/MapViewer/WellSummaryCard.asp?api=34013210680000; and https://gis.ohiodnr.gov/MapViewer/WellSummaryCard.asp?api=34013210670000 (last accessed October 20, 2025).

777 (S.D. Ohio 2021) (citation omitted). "In other words, an affirmative defense is a 'perhaps, but' defense, which allows a party to argue that it is not liable even if the plaintiff has proved a prima facie case. *Id.* (citation omitted). Here, Defendants argue that the ODNR permits—which they say cannot be collaterally attacked—preclude a finding that Senterra proved the prima facie case for trespass, conversion, and unjust enrichment. (*See generally* Doc. 42). Though Defendants did not raise this defense in their answer, the argument, on its face, is not a "perhaps, but" defense. Instead, the defense challenges Plaintiff's ability to prove its case. Consequently, Defendants may argue it here, and the Court will consider the ODNR permits along with Defendants' Motion.

  **B. Defendants' Motion for Partial Judgment on the Pleadings**

Turning to the merits. Title XV of the Ohio Revised Code concerns the conservation of Ohio's natural resources via the Department of Natural Resources. Under this title, the legislature established the Division of Oil and Gas Resources Management (the "Division") to "regulate the permitting, location, and spacing of oil and gas wells and production operations." Ohio Rev. Code § 1509.02; *see also State ex rel. Morrison v. Beck Energy Corp.*, 989 N.E.2d 85, 91 (Ohio App. 2013) (noting Revised Code chapter 1509 "provides a comprehensive regulatory scheme for oil and gas well[] operations in the state"), *aff'd*, 37 N.E.3d 128 (Ohio 2015). The Division has exclusive authority to do so. Ohio Rev. Code § 1509.02.

Relevant here, Ohio Revised Code § 1509.05 states, "No person shall drill a new well, drill an existing well any deeper, reopen a well, convert a well to any use other than its original purpose, or plug back a well to a source of supply different from the existing pool, without having a permit to do so issued" by the chief of the division of oil and gas resources management (the "Chief"). A drilling application must include, among other things, the name and address of the person who has the right to drill a tract of land, the name and address of anyone holding a royalty interest in the

6

tract, the designation of the well by name and number, the geological formation to be used, and the type of drilling equipment to be used. Ohio Revised Code § 1509.06(A).

Absent from the statutory scheme is a requirement for the entity seeking the permit to submit any relevant oil and gas lease for the Chief's review or else provide notice to impacted parties. *Id.* And this makes sense. Ohio courts have explained that "the [Ohio] legislature clearly contemplated that issuance of a drilling permit would be a relatively straightforward ministerial act." *Simmers v. N. Royalton*, 65 N.E.3d 257, 263 (Ohio Ct. App. 2016); *see also Barclay Petroleum, Inc. v. Dep't of Nat. Res.*, 2001 WL 242567 (Ohio Ct. App. 2001). In fact, the only situation provided where the Chief "shall" deny a drilling permit is if she finds "that there is a substantial risk that the operation will result in violations of [Section 1509] or rules adopted under it that will present an imminent danger to public health or safety or damage to the environment." Ohio Rev. Code § 1509.06(F).

Importantly, "[t]he issuance of a permit shall not be considered an order of the [Chief]." *Id*. For this reason, drilling permits may not be appealed to the pertinent appellate body, the Oil and Gas Commission. *Chesapeake Expl., L.L.C. v. Oil & Gas Comm.*, 985 N.E.2d 480, 484 (Ohio 2013) (holding the Ohio legislature expressly divested appellate jurisdiction from the Oil and Gas Commission for these permits); *cf.* Ohio Revised Code § 1509.36 (stating any "person adversely affected by an order by the chief of the division of oil and gas resources management may appeal to the oil and gas commission for an order vacating or modifying the order.")).

Defendants presumably succeeded in navigating the permit application process. (*See* Doc. 42 at 12 ("Defendants submitted application materials under section 1509.06 . . . .")). As stated, the Chief issued Rice permits to drill three new wells in 2016. (*See supra* footnote 1). Among other things, all three specify the purpose of the well, the well's designation and location, special

7

permit conditions, and the impacted geological formations. (*Id.*). Of the last, all three specify "Utica Thru Point Pleasant." (*Id.*).

Against this backdrop, Defendants contend that Senterra's trespass, conversion, and unjust enrichment claims impermissibly collaterally attack the ODNR permits. (Doc. 42). In other words, Defendants say that because the ODNR permits allowed them to "drill [a] new well" at "Utica thru Point Pleasant," any claim regarding the mineral rights is precluded. (*Id.*; *see generally* Doc. 22-1).

Defendants' Motion fails on two fronts. First, the Court is not persuaded that the ODNR permits are protected by the collateral attack doctrine as Defendants claim. Second, the ODNR permits are not the relevant source of authority for Senterra's tort claims—the parties' oil and gas lease is.

1. *Collateral Attack*

"[A] collateral attack as 'an attempt to defeat the operation of a judgment, in a proceeding where some new right derived from or through the judgment is involved.'" *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 505 F. App'x 430, 433 (6th Cir. 2012) (quoting *Ohio Pyro, Inc. v. Ohio Dep't of Commerce*, 875 N.E.2d 550, 555 (Ohio 2007)). In other words, a collateral attack is "[a]n attack on a judgment in a proceeding other than on a direct appeal" that "seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court." *Republic Bldg. Co., Inc. v. Charter Twp. of Clinton*, 81 F.4th 662, 666 (6th Cir. 2023) (citations and internal quotation marks omitted); *see also Ohio Pyro, Inc.* 875 N.E.2d at 555 (citing Black's Law Dictionary (8th Ed. 2004) 278)) (noting another term for "collateral attack" is "indirect attack"). "[C]ollateral attacks exist where the relief sought would, in some way, overrule another court's ruling. *Republic Bldg. Co., Inc.*, 81 F.4th at 666. A collateral attack "will only be permissible if

8

the initial judgment was entered by a court lacking jurisdiction or an act of fraud resulted in the entry of the judgment." *JGR, Inc.*, 505 F. App'x at 433.

The Sixth Circuit is clear that "[d]ismissal of a collateral attack is [] in the nature of res judicata . . . which requires [the Court] to 'look to the rules of res judicata in the forum that decided the first case.'" *Republic Bldg. Co., Inc.*, 81 F.4th at 667 (citations omitted). To any extent collateral attack applies here, then, the Court looks to Ohio law.

In Ohio, "[a]lthough the doctrine of res judicata generally applies to judicial hearings, when an administrative agency, acting in a judicial capacity, resolves disputed issues of fact which the parties have had an adequate opportunity to litigate, the doctrine of res judicata applies to the administrative decision as well." *Gerstenberger v. Macedonia*, 646 N.E.2d 489, 493 (Ohio 1994) (citing *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966) and *Superior's Brand Meats, Inc. v. Lindley*, 403 N.E.2d 996 (Ohio 1980)). "Determinations made in administrative proceedings are given preclusive effect (1) only if the parties had a full and fair opportunity to litigate the matters involved and (2) if the proceedings culminated in a definitive resolution of the matters." *Id.*

Under this precedent, the collateral attack doctrine is inapplicable. For one, the statutory scheme under which Defendant Rice applied for and received its drill permits did not allow for Senterra's involvement in a "full and fair opportunity to litigate the matters involved." *Id.* Neither Defendants nor the Chief were required to provide notice to Senterra when Defendant Rice filed its application under Ohio Revised Code § 1509.06 or before the permits were issued. *See* Ohio Revised Code § 1509.03(B)(1) (excluding permits issued under § 1509.06 from certain notice requirements); *cf.* Ohio Revised Code § 1509.06(A)(9) (requiring notice be provided via "regular mail of the application [of a permit to drill a new well] to the owner of each parcel of real property

9

that is located within five hundred feet of the surface location of the well" for wells within an urbanized area only)). Nor was Senterra entitled to a hearing under the statute. *Cf.* Ohio Revised Code § 1509.27 (requiring upon the submission of an application for a mandatory pooling order that the Chief notify relevant mineral rights owners of the application and their right to a hearing). And Defendants have not demonstrated Senterra was otherwise afforded notice or an opportunity to be heard. Nor could Senterra appeal the permit to the Oil and Gas Commission, further confirming it is not an order. Ohio Rev. Code § 1509.06(F); *Chesapeake Expl., L.L.C.*, 985 N.E.2d at 484. At base, it is not immediately clear, nor do Defendants provide a satisfying answer, why such a "relatively straightforward ministerial act," *Simmers*, 65 N.E.3d at 263, qualifies as a judgment for purposes of a collateral attack.

The Ohio case Defendants cite as support does not say otherwise. (*See* Doc. 44 at 8 (relying on *Schrimsher Oil & Gas Exploration. v. Stoll*, 484 N.E.2d 166 (Ohio Ct. App. 1984))). In *Schrimsher Oil & Gas Exploration v. Stoll*, an oil and gas company entered into separate oil and gas leases with several landowners. *Id.* at 167. Leases with three landowners contained unitization provisions that contemplated their properties being "pooled" to form a drilling unit that met statutory acreage and distance requirements for a drilling permit. *Id.* The lease of the fourth landowning couple, the Stolls, was different and contained no such provision. *Id.* Under Ohio Revised Code § 1509.26, if the company wanted a permit for pooled tracts, it was required to file with its permit application written pooling agreements for each property owner that would be in the drilling unit. *Id.* at 167–68. The company failed to include the written pooling agreements in its application, but the ODNR Chief "apparently" issued a drilling permit that covered the Stolls' property anyway. *Id.* at 167.

10

When the Stolls found out—after the company installed the drilling rig—they "protested the use of [their] acreage in the unitization plan." *Id*. But then, they "acquiesced in the new drilling site" after the company's promise to pay them a percentage of the well's royalty. *Id.* After the Stolls refused to sign a division agreement, the company brought an action for declaratory judgment, and the Stolls counterclaimed for damages. *Id.* On appeal, the Stolls argued that the trial court erred in dismissing their counterclaim for damages. The court noted that the Stolls asserted "that the permit was illegally obtained without their written consent." *Id.* at 168. But, said the court, "[e]ven if true, the Stolls cannot now collaterally attack the issuance of the permit." *Id.* The court further commented that "[t]he Stolls could have sought relief through the Division of Oil and Gas when they learned that [the company] had obtained a permit without their written consent." *Id.*

The Court is not convinced that these few sentences are the homerun Defendants want them to be. Even putting aside the factual differences between *Stoll* and this case, the *Stoll* court offered minimal analysis as to why the permit at issue could not be collaterally attacked. Plus, *Stoll* was decided before the precedent cited above about the collateral attack doctrine was decided. And, perhaps most important, *Stoll* applied dated law. It was written before Ohio Revised Code § 1509.06 was amended to specify that "[t]he issuance of a permit shall not be considered an order of the [Chief]." Ohio Rev. Code § 1509.06(F); *see also* 2010 Am.S.B. No. 165, 128 Ohio Laws 27. So Senterra, unlike the Stolls, could not have sought relief through the Division of Oil and Gas related to the issuance of the permit. *See Chesapeake Expl., L.L.C.*, 985 N.E.2d at 484. These many differences make *Stoll* a poor fit here.

At the end of the day, though, it does not matter whether the ODNR permits are protected by the collateral attack doctrine because the Court does not accept Defendants' premise.

11

Defendants contend that "[t]o uphold the trespass, conversion, and unjust enrichment claims based on unauthorized drilling into, and production from, the Point Pleasant" the Court must "in some fashion overrule the [well permits] granting Defendants the right to drill and produce the Point Pleasant via the disputed wells." (Doc. 44 at 7). While the permits may represent a source of lawful authority, they are not necessarily the relevant source of lawful authority for Senterra's tort claims. Instead, that relevant authority is found in the parties' Lease.

> 2. *Relevant Authority*

Even if the Court were to accept that the ODNR permits are protected by the collateral attack doctrine, Senterra's tort claims do not challenge Defendants' authority to build or operate the Wells under the ODNR permits nor would a Senterra victory in this action overrule any aspect of the ODNR permits. This is true for a few reasons.

First, Senterra's trespass and conversion claims, and the unjust enrichment claim which flows from the latter, concern Senterra's property rights. (*See, e.g.*, Doc. 22-1 at ¶¶ 88, 90, 93, 101, 103, 104, 109). *See, e.g.*, *Honey Crest Acres, LLC v. Rice Drilling D, LLC*, 723 F. Supp. 3d 617, 624–625 (S.D. Ohio 2024) ("Under Ohio law, '[a] trespass is an interference or invasion of a possessory interest in property. A person or entity is liable to another for trespass if the person or entity intentionally enters upon land in the possession of another or causes a thing or third person to do so.'" (citation omitted)) ("Conversion is the 'exercise of dominion or control wrongfully exerted over property in denial of or under a claim inconsistent with the rights of another.'" (citation omitted)); *Senterra Ltd. v. Rice Drilling D, LLC*, No. 2:24-CV-3181, 2025 WL 896635, at *5 (S.D. Ohio Mar. 24, 2025) ("In the oil and gas context, when a defendant's fracking produces oil and gas minerals from a landowner's subsurface property without the owner's permission, that is a trespass."); *TERA II, LLC v. Rice Drilling D, LLC*, 679 F. Supp. 3d 620 (S.D. Ohio 2023)

("The purpose of conversion is to remedy the wrong visited upon the Plaintiff for being deprived of her property[.]"), *on reconsideration in part*, No. 2:19-CV-2221, 2024 WL 231456 (S.D. Ohio Jan. 22, 2024), *and opinion clarified*, No. 2:19-CV-02221, 2024 WL 248889 (S.D. Ohio Jan. 22, 2024).  An ODNR permit, on the other hand, does not concern property rights.  Nor is an ODNR permit meant to provide drilling companies a way around those rights.  This is obvious from a plain read of the relevant statutory language.

As previously explained, the legislative purpose of the Division of Oil and Gas Resources Management is to "regulate the permitting, location, and spacing of oil and gas wells and production operations."  Ohio Revised Code § 1509.02.  The Chief is empowered to administer, implement, and enforce rules related to this aim.  Ohio Revised Code § 1509.03.  "The rules shall include an identification of the subjects that the chief shall address when attaching terms and conditions to a permit . . . with respect to a horizontal well and production facilities associated with a horizontal well."  *Id.*  These subjects include "safety in well drilling and operations, protection of the public water supply, and containment and disposal of drilling and production waste."  *State ex rel. Food & Water Watch v. State*, 100 N.E.3d 391, 395 (Ohio 2018) (citing Ohio Revised Code § 1509.03).  Nowhere does Section 1509 empower the Chief to adopt or enforce rules pertaining to property rights.  Nor does the Chief's permitting power contemplate property rights.  Indeed, the issuance—or denial—of a permit is based primarily on the Chief's determination regarding the safety of the site and drilling plans as well as impact on natural resources under the rules of Ohio Revised Code § 1509.  *See* Ohio Revised Code § 1509.06 (requiring an application include, among other things, the location of the drill site, identification of impacted ground and surface water, identification of public roads to be used related to the well site, and a plan for restoration).

At base, actions alleging trespass and conversion are "inherently judicial" because they "involve property rights."  *See SWEPI, L.P. v. Camden Res., Inc.*, 139 S.W.3d 332, 339 (Tex. Ct. App. 2004) (noting that though the Texas Railroad Commission had "primary jurisdiction over matters concerning the production of oil and gas," it did not have "jurisdiction over inherently judicial actions such as those for trespass and conversion" because they "involve property rights") (collecting cases); *cf.*; *Consol. Land Co. v. Capstone Holding Co.*, 2002 WL 34714571, at *7 (Ohio Ct. App. 2002) (considering a future potential ODNR mining permit and noting that "ODNR cannot adjudicate property rights disputes or issue injunctions to protect those rights"); *Mulvey v. Mobil Producing Texas & New Mexico Inc.*, 147 S.W.3d 594 (Tex. App. 2004) (noting trial courts "must fully assume jurisdiction for certain questions involving oil and gas production; examples include the determination of property rights and quieting title, legal construction of oil and gas contract provisions, and other matters not statutorily committed to the discretion of" the relevant administrative actor); *Snyder Ranches, Inc. v. Oil Conservation Comm'n*, 1990-NMSC-090, 798 P.2d 587, 590 (N.M. 1990) ("The issuance of a license [to inject salt water into a disposal well] by the State does not authorize trespass or other tortious conduct by the licensee, nor does such license immunize the licensee from liability for negligence or nuisance which flows from the licensed activity.").  Defendants have not suggested that any provision of Section 1509 expressly divests the Court of this jurisdiction or vests it with ODNR instead.

Nor have Defendants supplied a provision of Section 1509 meant to supersede rights granted or reserved in an oil and gas lease.  In Ohio, the oil and gas lease reigns supreme.  The Supreme Court of Ohio has made clear that "[t]he oil and gas lease is central to the oil and gas industry . . . . The lease provides a mechanism by which an owner of mineral rights can permit others to explore and exploit the land's mineral resources in exchange for royalties and other

consideration." *Chesapeake Expl., L.L.C. v. Buell*, 45 N.E.3d 185, 189 (Ohio 2015) ((citations omitted); *see also Harris v. Ohio Oil Co.*, 48 N.E. 502, 506 (Ohio 1897) ("The rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument."); *Talbott v. Condevco, Inc.*, 155 N.E.3d 84, 93 (Ohio Ct. App. 2020) ("[T]he plain language of the [oil & gas] lease governs."). To hold that ODNR permits, rather than leases, govern property rights would upend oil and gas law across the State.

All of this is not to say that the ODNR permits are meaningless. Ohio law is clear that no person shall drill a new well without having a permit to do so. Ohio Revised Code § 1509.05. But the relevant authority in considering Senterra's trespass, conversion, and unjust enrichment claims is the parties' Lease. Consequently, Defendants have not carried their burden to demonstrate that the existence of ODNR permits foreclose Plaintiff's tort claims.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Judgment on the Pleadings is **DENIED** (Doc 42).

IT IS SO ORDERED.

Date: October 20, 2025  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

15